IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **Pitt Penn Holding Co**, *et al.*, | Case No. 09-11475 (BLS) |
| Debtors. | (Jointly Administered) |
| **Industrial Enterprises of America, Inc.,** | Adv. No. 11-51880 |
| Plaintiff, | Related to Adv. Dkt. Nos.: 67, 92, 93, 94, 95, 96, 97, 98, 101, 102, 103, 104, 105, 106, 107, 108, 112, 113, 116, 117, 124, 125, 126, 127, 128, 129, 176 & 177 |
| v. | |
| **John Mazzuto, James Margulies, Jeffrey Levinson, Killeen & Associates, P.C., Crawford Shaw, M4 Capital LLC, Robert Casper, Jay 3 Corp., James Mazzuto, John Stefiuk, James Strupp, David Zazoff, ZA-Consulting LLC, Barry Margulis, Scott Margulis, Alan Berger, Mitch Seifert, Barry Honig, Lloyd Dohner, Lloyd Dohner d/b/a Donson Brooks Marketing, JG Capital, Inc., River Valley Inc. jointly and severally with Peter Vanucci, David Selmon, Steven Berger, Margulies & Levinson, Theresa Mazzuto, Berger Apple, Robert Dan Redmond, Computer Protech, Inc., Black Nickel, Inc., and Black Nickel Vision Fund LLC,** | |
| Defendants. | |

# <u>OPINION</u>[1]

Before the Court are ten motions to dismiss and supplements thereto[2] (collectively, the "Motions") filed by the Defendants[3] in Adversary Proceeding No. 11-51880. The Defendants seek dismissal of the Second Amended Complaint[4] (the "Complaint") filed by Plaintiff-Debtor Industrial Enterprises of America, Inc. ("IEAM") on January 31, 2012. IEAM opposes the Motions. The Court has conducted oral argument on all of the Motions.[5]

IEAM's 200-paragraph Complaint alleges that the Defendants were knowing participants in a massive fraud (the "Mazzuto Scheme"). Defendants John Mazzuto and James Margulies, former IEAM executives and the Mazzuto Scheme's ringleaders, have been convicted of numerous crimes and are now in prison.

The Court acknowledges that the allegations are vigorously disputed, but that is not part of the inquiry. This is a not a motion for summary judgment. IEAM gets the benefit of the doubt at this stage, and the Complaint does not conjure a fraud out of thin air. Rather, IEAM alleges that the Defendants participated in a proven fraud. For a

---

[1] The Court has jurisdiction over this matter, 28 U.S.C. §§ 1334 and 157(a) and (b)(1). Venue is proper in this district, 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(H). The Court makes no findings of fact or conclusions of law pursuant to Federal Rule of Civil Procedure 52(a)(3), made applicable to this adversary proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

[2] Adv. Dkt. Nos. 35, 36, 39, 40, 41, 42, 92, 93, 94, 95, 96, 97, 98, 101, 102, 103, 104, 106, 107, 112, 113, 124, 125, 126, 127, 128, 129, 176 & 177.

[3] Defendants Jeffrey Levinson, Robert Casper, James Mazzuto, James Strupp, David Zazoff and ZA-Consulting LLC, Alan Berger, Mitch Seifert, Barry Honig, David Selmon, Scott Margulis, Barry Margulis, and Robert Dan Redmond (collectively, the "Defendants") have filed or joined in the Motions to Dismiss IEAM's Second Amended Complaint. Defendant James Mazzuto also joins in several arguments in the Motion to Dismiss IEAM's First Amended Complaint in Adversary Proceeding No. 11-51868 (Adv. Dkt. Nos. 74 & 75), a factually and legally similar proceeding before this Court, filed by Susan and Matthew Collyer.

[4] Adv. Dkt. No. 67.

[5] The Court has also considered the Motion to Dismiss (Adv. Dkt. Nos. 176 & 177) filed by Defendants Scott and Barry Margulis on October 1, 2012 and will rule on the Motion without a hearing.

few claims and Defendants, the allegations are too thin or too late to reel in the Defendants.  But despite the considerable number of mathematical errors, omissions, and inconsistencies pointed out by the Defendants' counsel, the Complaint presents a plausible and coherent central narrative.  For the reasons that follow, the Court finds that most of IEAM's claims are sufficiently pled.  Accordingly, the Motions will be granted in part and denied in part.

## I. BACKGROUND

The Court and the parties are now familiar with the story.[6]  The record reflects that, beginning in 2004, the Mazzuto Scheme's chief architects, defendants John Mazzuto and James Margulies, conspired to loot IEAM by conducting a pump-and-dump scheme using restricted shares of company stock.  The heart of the Complaint is that the Defendants, in cooperation with the now-convicted perpetrators of the Mazzuto Scheme, wrongfully accepted and sold restricted IEAM stock without paying fair value and with knowledge that they were not entitled to the stock.  The Complaint also alleges that certain Defendants received improper cash payments, prepared false financial statements, or committed other wrongful acts in furtherance of the fraud.

The Complaint contains six separate counts.  Count I asserts a claim for civil conspiracy under New York law.  Count II seeks to avoid alleged fraudulent transfers under § 548(a) of the Bankruptcy Code (the "Code").  Count III alleges that the Defendants were unjustly enriched by the unlawful receipt of stock and cash payments.  Count IV seeks to avoid transfers under Code § 544(b), asserting state law claims under Section 270 *et seq.* of the New York Debtor and Creditor Law.  Count V alleges breach of fiduciary duty claims against certain defendants

---

[6] For a summary of the relevant factual background, see Order in *IEAM v. Burtis* (*In re Pitt Penn Holding Co.*), No. 09-11475-BLS, Adv. No. 11-51868, at ¶¶ 1-6 (Bankr. D. Del. Nov. 28, 2011) (granting in part and denying in part an earlier motion to dismiss filed by Susan and Matthew Collyer in a sister adversary proceeding involving substantially the same factual allegations).

under New York law.  In Count VI, IEAM asserts a recovery action under Code § 550(a) by way of § 544.

As described in greater detail below, by Order dated March 5, 2012,[7] the Court dismissed the § 548(a) claims to the extent that IEAM alleged no wrongdoing within two years of the Petition Date.  The Order also deemed the Second Amended Complaint timely filed and established that the Court would consider arguments made by the parties in motions to dismiss earlier versions of the Complaint.

The Defendants' Motions assert a variety of arguments and affirmative defenses.[8]  The Defendants urge dismissal, without leave to amend, of IEAM's claims on the following grounds:

i.     IEAM's claims were released in the Class Action Settlement Agreement;

ii.    The doctrine of *in pari delicto* bars IEAM's state law claims;

iii.   The Stock Option Plan expressly authorizes IEAM's issuance of stock to the Defendants;

iv.    IEAM was free to issue common stock to the Defendants other than through the Stock Option Plan;

v.     IEAM's claims fall outside the applicable state statutes of limitations and Bankruptcy Code "look-back" periods;

vi.    The alleged transfers were lawful payments contemplated in the Defendants' contracts with IEAM;

vii.   The issuance of IEAM stock to the Defendants is not a permissible basis for claims under § 544(b) and New York Debtor and Creditor Law Section 270 *et seq.*; and

viii.  IEAM fails to plead essential elements of the claims or meet basic pleading standards, much less the heightened standards for fraud.

---

[7] Adv. Dkt. No. 87.

[8] In the interest of simplicity, the Court will refer to the Defendants' arguments collectively, as if they were stated in a single motion to dismiss.

The Court proceeds in this order, addressing first those arguments that are based upon common factual allegations, applicable to more than one claim, or otherwise susceptible to a global discussion. Next, the discussion focuses on pleading standards for each claim. The Court concludes with the analysis of particular claims against certain individual Defendants.

The Court has had occasion to rule on many of these issues upon motions to dismiss IEAM's complaints in other adversary proceedings. *See, e.g., IEAM v. Tabor Acad.* (*In re Pitt Penn Holding Co., Inc.*), No. 09-11475, Adv. No. 11-51879, 2011 WL 4352373 (Bankr. D. Del. Sept. 16, 2011).[9]  To the extent that the proceedings involve parallel claims and fact patterns, the Court will strive for consistent treatment.

## II.  STANDARD OF REVIEW

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the factual allegations in a complaint.[10]  The chief inquiry is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997).  The movant carries the burden of demonstrating that dismissal is appropriate.  *In re Intel Corp. Microprocessor Anti-Trust Litig.*, 496 F. Supp. 2d 404, 408 (D. Del. 2007).

A complaint must comport with the pleading requirements set forth in the Federal Rules of Civil Procedure.  Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[11]  Fed. R. Civ. P. 8(a)(2).  The purpose of the rule is to provide the defendants with notice of the nature and grounds of the claim.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a motion to dismiss, "[t]he plaintiff must

---

[9] The other proceedings are: *IEAM v. Brandywine Consultants*, Adv. No. 09-52318 (Adv. Dkt. Nos. 59, 60); *IEAM v. Rosenthal*, Adv. No. 09-52316 (Adv. Dkt. Nos. 53 & 54); and *IEAM v. Burtis*, Adv. No. 11-51868 (Adv. Dkt. Nos. 54 & 55).

[10] The rule is made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7012(b).

[11] Rule 8(a) is made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7008(a).

put some 'meat on the bones' by presenting sufficient factual allegations to explain the basis for its claim." *Buckley v. Merrill Lynch & Co., Inc.* (*In re DVI, Inc.*), No. 03-12656-MFW, Adv. No. 08-50248, 2008 WL 4239120, at *4 (Bankr. D. Del. Sept. 16, 2008).

Where, as here, the claims sound in fraud, the elevated standard of Rule 9(b) applies.[12]  Rule 9(b) provides that the allegations must "state with particularity the circumstances constituting the fraud," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  The purpose of the rule is to ensure that plaintiffs "place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).  Allegations of "date, place, or time" may be sufficient to meet the requirement of Rule 9(b).  *Id.*  Constructive fraud claims, on the other hand, are subject to the lower standard of Federal Rule of Civil Procedure 8.  *See Charys Liquidating Trust v. McMahan Sec. Co.* (*In re Charys Holding Co.*), 443 B.R. 628, 632 n.2 (Bankr. D. Del. 2010).  Further, in a bankruptcy action, "greater liberality should be afforded in the pleading of fraud."  *In re Global Link Telecom Corp.*, 327 B.R. 711, 717 (Bankr. D. Del. 2005).

On a Rule 12(b)(6) motion to dismiss, courts in the Third Circuit conduct a two-part analysis.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).  First, the court separates the factual elements from the legal elements of a claim.  *Id.*  The court must accept all well-pleaded allegations as true and construe them in the light most favorable to the plaintiff.  *Id.* at 211.  The court does not extend such treatment to conclusory legal statements.  *Id.*  Second, the court determines whether the factual allegations state a plausible, and not merely speculative, claim for relief.  *Id.*

---

[12] Rule 9(b) is made applicable by Federal Rule of Bankruptcy Procedure 7009.

# III. DISCUSSION

## A. The Class Action Settlement Agreement Does Not Require Dismissal of IEAM's Claims at this Stage

The Defendants first direct the Court's attention on the Class Action Settlement Agreement.[13]    According to the Defendants, the Settlement Agreement released the claims now asserted in IEAM's Complaint.

Courts considering a motion to dismiss are not obligated to construe documents that lie outside of the pleadings.  *In re Rockefeller Ctr. Properties, Inc. Secs. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Nevertheless, the Court will exercise its discretion here to the extent necessary to determine, as an initial matter, whether the issues raised by the Defendants are susceptible to resolution at this stage.

The record reflects that in the Class Action, a plaintiff class consisting of persons who purchased or otherwise acquired IEAM common stock during the Class Period of December 4, 2006 to November 7, 2007, brought claims for violation of federal securities law.[14]  The signatories to the Settlement Agreement include IEAM, John Mazzuto, James Margulies, and Robert "Dan" Redmond.[15]

The Settlement Agreement releases all "Settled Claims" against all "Released Parties," including IEAM and its officers, directors, shareholders, agents, employees, and attorneys.[16]  Settled Claims are defined in pertinent part as any claims that the class plaintiffs (i) asserted in the litigation, or (ii) could have asserted and "arise out of [a

---

[13] IEAM shareholders filed a securities class action (the "Class Action") against Mazzuto, Margulies, IEAM, and other parties on November 14, 2007.  Compl. ¶¶ 119-120.  The parties to the action settled in the Superseding Stipulation and Agreement of Settlement (the "Settlement Agreement") in December 2010.  *See* Supp. Br. of Def. James Mazzuto Ex. B at 1-2, 7, Apr. 2, 2012.

[14] *See id* at 18, 21.  The shareholder complaint alleged violations of (i) Section 10(b) and Rule 10b-5, and (ii) Section 20(a) of the Securities Exchange Act.  *Id.* at 8-17. The complaint alleged that the defendants made false financial statements, but it does not include allegations expressly concerning the pump-and-dump scheme. *See id.*

[15] *See id.* at 7.

[16] *Id.* at 11-13.

class member's] purchase, acquisition, sale, or holding of IEAM common stock during the Class Period."[17]  The release expressly covers assignees of the class.[18]  Another provision assigns to IEAM "any and all claims not released by this settlement that [the plaintiff class members] have or may have against persons other than Defendants which arose out of or relate to the issuance or transfer of IEAM stock, assets, or property."[19]

The Settlement Agreement also releases "Settled Defendants' Claims," defined as claims IEAM could have asserted against members of the plaintiff class that "arise out of or relate in any way to the institution, prosecution, or Settlement of this Litigation or the Settled Claims...."[20]  The definition excludes claims "that in any way arise out of the acquisition or transfer of IEAM stock during the Class Period, other than as to lawful and proper purchases on the open market," including several causes of action under the Bankruptcy Code.[21]

The Defendants argue that IEAM's current claims are Settled Claims of the plaintiff shareholder class that were released in the Settlement Agreement.  Indeed, many of the current Defendants appear to come within the scope of the Agreement's broad definition of Released Parties.[22]

IEAM asserts several arguments in opposition.  First, in the Complaint, IEAM contends that the Settlement Agreement's assignment provision gave the company the claims now asserted against the Defendants.[23]  Second, outside of the pleadings, IEAM argues that the current claims are IEAM's own, and do not derive from or otherwise depend upon the assignment of claims from the

---

[17] *Id.*

[18] *Id.*

[19] *Id.* at 21.

[20] *Id.* at 13-14.

[21] *Id.*

[22] *See id.* at 37.

[23] Compl. ¶¶ 121-22.

shareholders.[24]   Third, IEAM argues that the Settlement Agreement released only claims related to financial fraud unrelated to the illicit issuance of restricted shares under the Stock Option Plan.[25]   IEAM describes language in the definition of Settled Defendants' Claims as a carve-out for its current claims.

The Defendants, relying instead on the definition of Settled Claims, argue that IEAM fails to show how the current claims are different from Settled Claims.  In any event, they argue that IEAM had an obligation to investigate the extent of injury to the company upon notice of the potential harm.  The Defendants suggest that IEAM could and should have discovered the wrongdoing alleged in the Complaint in 2007 if the company had acted on the notice provided by the Class Action.

The Court will not decide today whether the Settlement Agreement creates an absolute bar to IEAM's current claims.  The parties point to different operative provisions of the Settlement Agreement and offer greatly conflicting constructions of the intent and import of the document.  Settled Claims are defined as claims that "arise out of or relate to the purchase of IEAM common stock during the Class Period."[26]   The parties here dispute whether IEAM's current claims fall within the ambit of Settled Claims.  The Defendants say the definition is broad enough to cover all of the wrongdoing alleged here, including the illegal issuance of SOP shares to the Defendants.  IEAM distinguishes the pump-and-dump scheme—the wrongdoing that is the principal subject of the Complaint—from the financial misstatements at issue in the Class Action.  Further factual inquiry and briefing by the parties is necessary before the Court can decide this question.

For the same reason, the Court cannot determine whether filing the Class Action gave sufficient notice to IEAM of the wrongdoing alleged in the Complaint and triggered IEAM's duty to investigate.

---

[24] *See* IEAM's Mem. 33-34, May 2, 2012; Mot. to Dismiss Hr'g Tr. 88-89, Aug. 30, 2012.

[25] Compl. ¶ 119; Tr. 87-88.

[26] *See* Supp. Br. of Def. James Mazzuto Ex. B at 13-14, Apr. 2, 2012.

These are questions of fact that the Court will leave for another day. For now, it is sufficient for IEAM to allege that the full extent of the Mazzuto Scheme, including the Defendants' alleged wrongdoing, only began to emerge after the Petition Date.

In sum, the legal and factual issues raised by the parties with respect to the Settlement Agreement are more appropriate for determination upon a motion for summary judgment. Accordingly, the Court will not further construe or interpret the Agreement now. The Settlement Agreement does not require dismissal of IEAM's Complaint at this stage.

## B. The Doctrine of *In Pari Delicto* Does Not Require Dismissal of IEAM's Complaint

### 1. *In Pari Delicto*

The Defendants assert the defense of *in pari delicto* against IEAM's claims. In short, the Defendants say IEAM's participation in the alleged wrongdoing bars its claims against them. In deciding a motion to dismiss, courts may consider affirmative defenses such as *in pari delicto* that are plain on the face of the pleadings. *ALA, Inc. v. CCAIR, Inc.*, 429 F.3d 855, 859 (3d Cir. 1994).

*In pari delicto* is not available to defendants who are insiders or fiduciaries of a corporate wrongdoer, or otherwise exercise control over the corporation.[27] *See In re Bernard L. Madoff Inv. Secs. LLC*, 458 B.R. 87, 123-25 (Bankr. S.D.N.Y. 2011) (rejecting assertion of the doctrine by former insider-managers). Thus, *in pari delicto* does not apply where a plaintiff adequately alleges a defendant's insider status. *See id.* at 124-25; *see also In re Oakwood Homes Corp.*, 340 B.R. 510, 536 (Bankr. D. Del.

---

[27] The same agency principles that impute wrongdoing to the corporation prevent a corporate insider from asserting *in pari delicto* as a "shield to prevent the corporation from recovering against him." *See In re Bernard L. Madoff Inv. Secs. LLC*, 458 B.R. 87, 102 n.26, 123-25 (Bankr. S.D.N.Y. 2011). In *Madoff*, the Court rejected the Defendants' motion to dismiss on *in pari delicto* grounds because Defendants' alleged insider status was a question of fact requiring discovery and trial. *Id.* at 123-25. The doctrine was held inapplicable because the plaintiff alleged that the defendants were "senior officers, directors, and compliance managers" of the corporation. *Id.* at 124.

2006) (declining to apply doctrine because plaintiff alleged that the defendants "became insiders, fiduciaries, and de facto controllers of the Debtors").    "Insider" status is broad and open-ended under the Bankruptcy Code.[28]  *See* 11 U.S.C. § 101(31).

*In pari delicto* bars a plaintiff from asserting a claim if the plaintiff bears "substantially equal" fault for the claim.  *Chevron Corp. v. Salazar*, Nos 11 Civ. 3718-LAK, 2011 WL 3628843 at *11 (S.D.N.Y. Aug. 17, 2011). The New York Court of Appeals explained the mechanics of *in pari delicto* in *Kirschner v. KPMG LLP*, 15 N.Y.3d 446 (N.Y. 2010). Wrongdoing is imputed to plaintiff-principals as a matter of agency law.  *Id.* at 465-66.  The presumption of imputation is a strong one. Even the fraudulent acts of an agent-wrongdoer are imputed to the principal-corporation.  *Id.* at 465.

The "narrow" adverse interest exception allows a plaintiff to rebut the imputation of wrongdoing by showing that the agent's actions were completely adverse to the corporation's interests.[29]  *Id.* at 466-69.  The exception is available only in cases of "outright theft or looting or embezzlement" where the "fraud is committed against a corporation rather than on its behalf."  *Id.* at 466.  The test is whether the agent's actions provided a benefit to the corporation.  *Id.* at 466-69.[30]  Only the "short term benefit or detriment" is relevant, and "not any

---

[28] In some cases, even third parties alleged to exert sufficient "domination and control" over the corporation may be barred from asserting *in pari delicto*.  *See id.* "Any person or entity whose relationship with the debtor is sufficiently close so as to subject the relationship to careful scrutiny" may qualify as an insider.  *In re Student Finance Corp.*, 335 B.R. 539, 547 (D. Del. 2005) (*quoting In re Demko*, 264 B.R. 404, 408 (Bankr. W. D. Pa. 2001)).  The "true test" is "whether one's dealings with the debtor cannot accurately be characterized as arm's length."  *In re Demko*, 264 B.R. at 408.  The inquiry is "fact-intensive and can be made only on a case-by-case basis."  *Id.*

[29] "To come within the exception, the agent must have totally abandoned his principal's interest and be acting entirely for his own or another's purposes."  *In re Refco Secs. Litig.*, 779 F.Supp.2d 372 (2011) 375 (quoting *Center v. Hampton Affiliates, Inc.*, 66 N.Y.2d 782, 784-85 (N.Y. 1985)).

[30] *Kirschner* firmly rejected an approach focused on the agent's subjective intent. *See Kirschner v. KPMG*, 15 N.Y.3d 446, 470-71 (N.Y. 2010).

detriment…resulting from the unmasking of the fraud."[31]  *Id.* at 460 (quoting *In re Wedtech Corp.*, 81 B.R. 240, 242 (Bankr. S.D.N.Y. 1987)).

Nevertheless, courts have declined to dismiss claims on *in pari delicto* grounds even where some allegations in the pleadings tend to show the corporation benefiting from the agent's wrongdoing.  *See In re Refco Secs. Litig.*, 779 F. Supp. 2d 372, 375 (S.D.N.Y. 2011);[32] *In re Adelphia Commc'ns Corp.*, 365 B.R. 24, 56-57 (Bankr. S.D.N.Y. 2007) (ruling that motion to dismiss was "incapable of resolution on motion" without further factual development as to the individual claims and defendants because the court was "not of a mind to hold…that even a peppercorn of benefit to a corporation from the wrongful conduct would provide total dispensation to defendants knowingly and substantially assisting insider misconduct that is overwhelmingly adverse to the corporation"); *In re Crazy Eddie Secs. Litig.*, 802 F. Supp. 804, 817-18 (E.D.N.Y. 1992) ("[T]he evidence…is certainly susceptible of the interpretation that any short term benefit to [the plaintiff] was intended to redound to the advantage of only the [defendants] and their conspirators.…The fact that some of the embezzled money was put back into the corporation…is not inconsistent with an

---

[31] Notably, allegations that an agent's fraud drove the corporation to bankruptcy do not compel a finding of adversity.  *Id.* at 468.

[32] The Southern District of New York expressly disagreed with the view that *any* benefit knocks out the exception.  *See In re Refco Secs. Litig.*, 779 F.Supp.2d 372, 376 (S.D.N.Y. 2011) (holding that *Kirschner* does not require finding a benefit just because "some of the monies still made it to the company coffers").  In *Refco*, the plaintiff, a securities litigation trustee acting on behalf of a hedge fund manager, alleged that the defendant, Refco Group, induced three fund directors to improperly transfer customer funds into unsegregated accounts.  *See id.* at 374-76.  The Court reviewed *de novo* a Special Masters' Report that had found that *in pari delicto* barred the plaintiff's claims because the complaint described certain benefits received by the fund manager, including, among other things, interest payments on the illicit accounts.  *See id.*  The Court disagreed, noting that the payments could be netted against the opportunity cost of the alleged fraud—higher interest payments that the fund manager would have earned if the agent-wrongdoers had kept the funds in the appropriate accounts.  *See id.* at 376.  Thus, the agents' alleged wrongdoing was "the *functional equivalent* of the 'theft or looting or embezzlement' that, under *Kirschner*, is the classic example of the adverse interest exception."  *Id.* (emphasis added).

abandonment…of the corporation's interest."). Thus, a plaintiff may adequately plead the exception where the "clear thrust" of a complaint is that the corporation did not benefit from the agent's wrongdoing. *Refco*, 779 F. Supp.2d at 375.[33]

The adverse interest exception is limited by the "sole actor" rule. The rule renders the exception unavailable to plaintiffs where the agent-wrongdoer and the principal are the same party. *See In re CBI Holding Co., Inc.*, 529 F.3d 432, 453 n.9 (2d Cir. 2008). Imputation is automatic where the corporation's sole shareholder, or all of its shareholders, were complicit in the fraud. *See id.* Put differently, to successfully plead the adverse interest exception, the allegations must support a finding that at least one "innocent insider" could have stopped the alleged fraud. *Id.*

To summarize, *in pari delicto* applies where the pleadings support imputation of alleged wrongdoing on agency principles. Insider defendants cannot use the doctrine. To avoid imputation, the pleadings, read favorably to the plaintiff, must adequately allege that the agent's wrongdoing did not benefit the corporation, and at least one decision-maker could have stopped the fraud.

For the reasons that follow, the Court concludes that *in pari delicto* does not require dismissal of IEAM's claims at this stage.

## 2. Defendants Alleged to be Insiders Cannot Assert *In Pari Delicto* at this Stage

---

[33] *Refco* also emphasized taking the pleadings in the light most favorable to the plaintiff. *See id.* at 374, 377. The defendant had argued that certain allegations showed the fund manager benefiting from its directors' alleged wrongdoing. *See id.* at 375-77 (discussing defendant's argument that millions in investment capital and credit received from the defendant was a quid pro quo benefit of the agents' wrongdoing). These allegations, the defendant argued, were fatally inconsistent with the plaintiff's position that no benefit accrued to the fund manager, foreclosing the adverse interest exception. *See id.* at 376-77. Disagreeing, the Court ruled that the complaint, read favorably to the plaintiff, did not show that these benefits flowed from the alleged wrongdoing. *See id.* Moreover, the Court flatly condemned the defendant's tactics because a motion to dismiss is "not designed to be a game of 'gotcha,' that ignores the clear thrust of hundreds of pages of specific allegations in favor a line or two…that is arguably inconsistent with that thrust." *Id.*

Insiders cannot wield *in pari delicto* as a shield against liability for corporate wrongdoing. IEAM alleges that many Defendants were officers and directors of the company.[34] Others are alleged to be relatives of the company's officers and directors, or entities controlled by the officers, directors, or their relatives.[35] IEAM adequately alleges the insider status of these Defendants. Accordingly, the Court finds that the defense of *in pari delicto* does not apply at this time with respect to claims against Defendants John Mazzuto, James Margulies, Barry Margulis, Scott Margulis, Crawford Shaw, Robert "Dan" Redmond, David Zazoff, Steven Berger, James Mazzuto, Theresa Mazzuto, Killeen & Associates, M4 Capital LLC, Robert Casper, Jay 3 Corp., ZA-Consulting, Lloyd Dohner, Donson Brooks Marketing, and LNG Associates.

### 3. IEAM Adequately Pleads the Adverse Interest Exception

IEAM must adequately plead the adverse interest exception to avoid imputation of wrongdoing. To be sure, some allegations cut against the basic premise that IEAM did not benefit from the alleged wrongdoing.[36] But this does not require dismissing IEAM's claims. IEAM alleges that the Mazzuto Scheme caused "direct and proximate harm to IEAM, which realized no benefit…except incidental infusions of illegally obtained funds for the purpose of concealing and perpetuating the fraud. In fact, IEAM was insolvent."[37] The Defendants allegedly paid nothing for improper cash transfers or SOP shares.[38] IEAM alleges that the proceeds of the pump-and-dump scheme enriched the co-conspirators, their friends and relatives, or were kicked-back to John Mazzuto and James Margulies.[39] The

---

[34] Compl. ¶¶ 193-97 (asserting breach of fiduciary duty claims against several Defendants).

[35] *See id.* ¶¶ 11-38.

[36] *See id.* ¶¶ 10, 102 (alleging that IEAM received some proceeds of its agents' fraudulent conduct).

[37] *Id.* ¶10.

[38] *Id.* ¶¶ 127, 152.

[39] *Id.* ¶ 126.

14

pleadings allow a reasonable inference that the net short-term impact of the alleged wrongdoing was financial harm to the company.  IEAM's cash and stock could have been exchanged for goods and services at fair market value.  Read favorably to IEAM, the Complaint says the company's agents fully abandoned IEAM's interests in pursuit of personal financial gain, and that IEAM did not benefit by their wrongdoing.  Accordingly, the Court finds that IEAM has adequately pleaded the adverse interest exception.[40]

The need for further factual development provides an additional reason for sustaining IEAM's claims against the Defendants' *in pari delicto* arguments.  Absent further factual development, the Court cannot conduct a detailed analysis with respect to each claim, Defendant, and alleged benefit conferred on IEAM.  *In pari delicto* does not require dismissal of IEAM's claims at this stage.

### i. IEAM is Granted Leave to Amend to Identify an Innocent Insider

At oral argument and in its Memorandum of Law in Opposition to the Motions, IEAM named former officers or directors of the

---

[40] The Defendants suggest that a recent Delaware District Court decision provides an appropriate track for ruling out the adverse interest exception.  In *Zazzali*, the court granted a motion to dismiss, on *in pari delicto* grounds, the plaintiff DBSI Trustee's claims alleging that the defendant, a third party law firm and DBSI's former counsel, participated in wrongdoing by drafting fraudulent legal documents.  *See Zazzali v. Fleischer*, No. 11-614-LPS, 2012 WL 3601431, at *9-10 (D. Del. Aug. 21, 2012).  That case is distinguishable on at least three counts.  First, the pleadings in that case unequivocally stated that the debtor, DBSI, was rotten to the core and "nothing more than an elaborate Ponzi scheme to defraud investors." *Id.* at * 9 (internal quotation marks omitted).  Here, read favorably to IEAM, the Complaint alleges that the Mazzuto Scheme looted an otherwise honest company.  Second, the law firm defendant in *Zazzali* was a third party that the court said lacked insider status absent allegations of control.  *See id.* at *10.  Here, several defendants are alleged to be officers and directors, their relatives, or companies controlled by such defendants.  These parties do not benefit from *in pari delicto*.  Third, the fraud revenue allegedly funneled back into DBSI totaled over $100 million, at least some of which was used "for general corporate purposes." *Id.* at *19.  In contrast, IEAM's Complaint does not allege general corporate use of proceeds of the fraud, much less specify such an astonishing amount.  As discussed above, the Court can reasonably infer that IEAM sustained a net loss from the alleged wrongdoing.

company who are not alleged to be involved in the wrongdoing at issue and appear to qualify as innocent insiders.[41]  Their names are absent from the Complaint.   Nevertheless, read favorably to IEAM, the Complaint permits the inference that not all of IEAM's management and shareholders were in on the Mazzuto Scheme.  IEAM alleges that John Mazzuto and James Margulies led the Defendants in a scheme to "loot" IEAM and were expelled by the board of directors upon discovery of the wrongdoing.[42]   Accordingly, the Court will grant IEAM leave to amend the Complaint to identify the alleged innocent insiders.

## C. IEAM Adequately Alleges that the Stock was Unlawfully Issued to the Defendants

The Defendants argue that the Complaint fails to state a claim because IEAM does not adequately allege that the Stock Option Plan (the "SOP") was unlawful, that the SOP was tied to the fraudulent or conspiratorial aspects of the Mazzuto Scheme, or that certain Defendants were not entitled to the stock.[43]   Specifically, the Defendants say the terms of the SOP contradict the Complaint because the plan expressly allows for stock transfers to family members and does not require that the stock be restricted.

The Court declines to dismiss IEAM's claims on these grounds. The arguments are effectively a denial of the central allegations of the Complaint: that the Defendants knowingly participated in the Mazzuto Scheme through their role as unlawful recipients of SOP shares.[44]   The Complaint alleges that the SOP was the vehicle for the pump-and-dump scheme and details the number, valuation, and transfer dates of

---

[41] *See* IEAM's Mem. 21.

[42] Compl. ¶¶ 6, 49, 144, 169-173.

[43] *See* Br. of Def.'s Susan and Matthew Collyer at 7, *IEAM v. Burtis* (*In re Pitt Penn Holding Co.*), No. 09-11475-BLS, Adv. No. 11-51868 (Bankr. D. Del. Mar. 29, 2012) (Adv. Dkt. No. 75).

[44] *See* Compl. ¶¶ 9-10, 45-54, 124-134.   For example, IEAM describes how the shares were issued and alleges that the issuance was unlawful under the SOP and the S-8 because (1) the Defendants were not Employees, Outside Directors, or bona fide Consultants entitled to receive the shares; (2) the shares were issued and sold by Defendants as non-restricted shares.  *Id.* ¶¶ 49-54.

shares allegedly received by the Defendants.  The Court will not determine at this stage whether SOP shares were unlawfully issued. Viewed in the light most favorable to the Plaintiffs, the Complaint adequately alleges the improper receipt of SOP shares by Defendants and the plan's illicit role in the Mazzuto Scheme.

## D. IEAM Adequately Alleges that the Stock was Issued Under the Stock Option Plan

The Defendants also argue that IEAM fails to allege facts sufficient to show that the shares were issued under the SOP.[45]  Noting that IEAM was free to issue non-SOP stock, the Defendants cite to cases applying a mandatory presumption that alleged transactions were done the "lawful way."[46]  If Defendants received non-SOP stock, they argue, the terms of the S-8 do not control, and the pleadings fail to state a claim against Defendants for the unlawful receipt and sale of SOP shares.

The Court rejects this argument for the reasons discussed above. Read favorably to IEAM, the Complaint alleges that shares were improperly issued to Defendants under the SOP.[47]  IEAM has alleged the exact number of shares, valuation, and dates of the transfers.[48] Further factual development may be desirable, but the Defendants cannot prevail at this stage on a denial of IEAM's core allegations.

## E. Applicable Statutes of Limitations Do Not Require Dismissal of IEAM's State Law Claims, but the § 548 Claims are Dismissed as to Some Defendants

### 1.  IEAM Asserts Equitable Tolling

In the Third Circuit, defendants may raise the statute of limitations in a motion to dismiss where "the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Oshiver v. Levin, Fishbein,*

---

[45] *See* Collyer Br. at 8-9, *IEAM v. Burtis* (*In re Pitt Penn Holding Co.*), No. 09-11475-BLS, Adv. No. 11-51868 (Bankr. D. Del. Mar. 29, 2012) (Adv. Dkt. No. 75).

[46] *Id.* at 9.

[47] *See* Compl. ¶¶ 9-10, 49, 147, 160.

[48] *Id.* ¶ 127.

*Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994); *see also Bethel v. Jendoco Const. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978) (noting that statute of limitations defense may be raised in a 12(b)(6) motion only if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations").

The Court has already ruled on statute of limitations issues in IEAM's sister proceedings. In *Burtis*, the Court ruled that IEAM's claims for fraudulent transfer, unjust enrichment, conspiracy, and §§ 544 and 550 claims survived motions to dismiss[49] because IEAM adequately pleaded the applicability of equitable tolling.[50] *See IEAM v. Burtis* (*In re Pitt Penn Holding Co., Inc.*), No. 09-11475-BLS, Adv. No. 11-51868, at 4-5 (Bankr. D. Del. Nov. 28, 2011) (denying in part motion to dismiss filed by Susan and Matthew Collyer) (Adv. Dkt. No. 32).[51]

The claims, dates, and factual allegations here are substantially the same. IEAM again pleads the doctrine of equitable tolling and alleges that the Defendants' fraudulent concealment prevented discovery of their alleged wrongdoing until the Petition Date at the earliest. Defendants respond that the Class Action put IEAM on notice of the wrongdoing, even if the alleged harms were distinct. As discussed above, further factual inquiry is needed before the Court can rule on this issue. For now, the Court accepts IEAM at its word and notes that the explanation is not implausible.

Equitable tolling postpones scrutiny of IEAM's claims on the various statute of limitations grounds asserted by the Defendants. Assuming equitable tolling until the Petition Date, IEAM's claims are

---

[49] Renewed motions to dismiss filed by Matthew and Susan Collyer are currently pending with respect to IEAM's First Amended Complaint in *Burtis*.

[50] In the Third Circuit, the question of equitable tolling "is not generally amenable to resolution on a Rule 12(b)(6) motion because the inquiry generally requires consideration of evidence beyond the pleadings." *In re Cmty. Bank of N. Va.*, 622. F.3d 275, 301 (3d Cir. 2010) (internal quotation marks omitted).

[51] The Court notes that the Nov. 28, 2011 Order granted the Collyers' Motion to Dismiss with respect to IEAM's § 548 claims because, in contrast to IEAM's other claims, equitable tolling does not apply to § 548. The Court issued an Opinion and Order on January 24, 2012 {Adv. Dkt. Nos. 54 & 55] denying IEAM's Motion to Reconsider with respect to this issue.

not barred under any of the various state statutes of limitations said to apply.  The Complaint was filed less than two years after the Petition Date, bringing it within the two-year tolling period of § 108 for applicable state statutes of limitations.[52]    11 U.S.C. § 108(a). Accordingly, taking the pleadings in the light most favorable to IEAM, the state law claims are not time-barred.[53]

### 2. IEAM's § 548 Claims Fail Against Defendants Not Alleged to Have Received Stock or Cash Within the Two-Year Look-Back Period

By Order dated March 5, 2012, the Court ruled that IEAM's § 548 claims in this proceeding are not subject to equitable tolling.[54]  The claims were dismissed with prejudice to the extent that IEAM alleges no wrongdoing within the two-year look-back period.  In Count III, IEAM seeks to avoid alleged stock transfers and cash payments to the Defendants under § 548.  Those claims must be dismissed to the extent that IEAM fails to allege relevant transfers or payments within the two years before the Petition Date, or after April 30, 2007.  Accordingly, Count III is dismissed as to Defendants Jeffrey Levinson, M4 Capital, Robert Casper, Jay 3 Corp., James Mazzuto, John Stefiuk, Scott

---

[52] The Defendants argue that § 108 does not apply because, among other reasons, IEAM received the claims by assignment in the Class Action Settlement Agreement.  *See* Levinson Br. 9, Apr. 2, 2012 (Adv. Dkt. No. 96).  In support, the Defendants cite to cases denying access to § 108 tolling to post-petition assignees of assigned claims.  *See, e.g., Turoff v. Jackson Walker (In re Precept Bus. Servs., Inc.),* No. 01–31351, Adv. No. 04–3216, 2004 WL 2074169, at *7, (Bankr. N.D. Tex. Aug. 24, 2004) (holding that § 108 does not toll claims owned by other parties as of the Petition Date).  As discussed, the Court will not rule at this time on the legal consequences of the Settlement Agreement, including the assignment provisions, absent further factual inquiry.  The Defendants also say IEAM's statement that the claims asserted in the Complaint were received by assignment in the Class Action Settlement Agreement is a binding judicial admission.  *See* Compl. ¶ 120-22.  But only "statements of fact that require evidentiary proof, not statements of legal theories," are binding.  *In re Teleglobe Commc'ns Corp.,* 493 F.3d 345, 377 (3d Cir. 2007).  Again, the Court will not decide today whether the claims asserted in Complaint were assigned, released, or entirely unaffected by the Settlement Agreement.

[53] IEAM's claims under §§ 544 and 550 survive because IEAM asserts equitable tolling of the state law claims asserted under those provisions.

[54] Adv. Dkt. No. 87.

Margulis, Alan Berger, Mitch Seifert, Barry Honig, JG Capital, River Valley, Peter Vanucci, David Selmon, Theresa Mazzuto, and Robert "Dan" Redmond.[55]

## F. Putative Contracts Contemplating the Alleged Transfers Do Not Require Dismissal of IEAM's Claim at this Stage

Several Defendants argue that the alleged stock or cash transfers are governed by contracts that demonstrate the Defendants' entitlement to the shares or payments.  These contracts, they say, require dismissal of IEAM's claims.  For example, Defendant Zazoff argues that his contract with IEAM demonstrates that the alleged cash transfers were lawful payments for bona fide consulting services.  Zazoff Memo. 26, Apr. 2, 2012.  That may well be the case.  However, at this stage, the Court reads the Complaint in the light most favorable to the plaintiff. IEAM alleges that the Defendants did not provide fair value and were not entitled to receive stock and cash.  The factual allegations allow a plausible inference that the stock and cash transfers were unlawful regardless of whether they were covered by contract.  The Defendants will have additional opportunities to present their side of the story.  For now, the Court concludes that the putative contracts do not require dismissal of any of IEAM's claims.

## G. The Alleged Stock Transfers are a Permissible Basis for Fraudulent Transfer Claims under § 544(b) and the Underlying New York Causes of Action

The Defendants urge dismissal of the § 544 claims because the alleged transfers did not "hinder, delay, or defraud" creditors under New York Debtor and Creditor Law ("DCL") Section 276.[56]  They argue that stock transfers have no impact on a corporation's assets, and thus no impact on the pool of assets available to creditors.

The Defendants cite to case law for the proposition that transfers of equity, including the issuance of stock, do not deplete or diminish

---

[55] The Court compiled this list by running an electronic search of the Complaint with respect to each Defendant and identifying those not specifically alleged to have unlawfully received cash or stock after April 30, 2007.

[56] *See* Collyer Br. at 15-23.

the pool of corporate assets available to creditors.  Because unissued shares are merely diluted interests of the corporation, they argue, the issuance of such shares cannot be an asset of the corporation.  Thus, the Defendants say the alleged transfers provide no basis for a § 544 claim.

The Court declines to dismiss these claims for the reasons stated in decisions in *Tabor* and *Brandywine*.[57]  *See IEAM v. Tabor Acad.* (*In re Pitt Penn Holding Co., Inc.*), No. 09-11475-BLS, Adv. No. 11-51879, 2011 WL 4352373 at *16-18 (Bankr. D. Del. Sept. 16, 2011); *IEAM v. Brandywine Consultants*, Adv. No. 09-52318, at *10-14 (Bankr. D. Del. Sept. 16, 2011) (Adv. Dkt. Nos. 59, 60).  In those decisions, the Court relied upon *Global Crossing* to deny motions to dismiss IEAM's claims under § 544.  *Global Crossing Estate Representative v. Winnick*, No. 04 Civ. 2558, 2006 WL 2212776 (S.D.N.Y. Aug. 3, 2006).  *Global Crossing* held that a plaintiff could adequately allege a property interest in unissued stock because such stock entitles the holder to an interest in the future profits of the company.  *Id.* at *9.  Alleging an interest in the stock is effective so long as the pleadings do not offer contradictory assertions that the company was, at the time of the transfers, in a hopeless financial situation.  *Id*.  Notably, allegations of insolvency alone are insufficient to negate the assertion that the stock has value.  *Id.*

Here, IEAM adequately alleges that it had an interest in the stock, and that the issuance and transfer of SOP shares to the Defendants depleted assets available to pay pre-bankruptcy creditors, all for the benefit of the Defendants.[58]  The Court can reasonably infer that IEAM could have otherwise exchanged the stock, at fair market value, for services that actually benefited the company.  Taken as true, it follows that IEAM had fewer assets on hand on the Petition Date, and creditors were harmed by the stock issuance and stand to benefit from avoidance of the transfers.  The Complaint also alleges that IEAM was insolvent,

---

[57] The Defendants ask the Court to reverse or abrogate its holdings in *Tabor* and *Brandywine* because the issuance of stock cannot be the subject of a fraudulent conveyance claim under New York law.  Upon consideration of the Defendants' arguments and cited cases, the Court respectfully declines to revisit the position stated in those decisions.

[58] Compl. ¶¶ 181-85.

but read favorably to the plaintiff, it does not paint a picture of a company doomed to failure.[59]   Accordingly, the allegations form an adequate basis for the § 544 claims.

## H. Analysis of Claims under Applicable Pleading Standards

The Defendants argue that IEAM fails to state a claim upon which relief may be granted because the Complaint does not meet the minimum pleading standards under *Twombly* and *Iqbal*, much less the heightened standard for fraud under Rule 9(b) of the Federal Rules of Civil Procedure.  The Defendants also say IEAM fails to plead essential elements of the asserted causes of action.  The Court will discuss the applicable standards and consider IEAM's allegations for each claim in turn.

### 1. IEAM's Civil Conspiracy Claims Are Dismissed with Leave to Amend

The Motions devote considerable attention to IEAM's civil conspiracy claims.  First, the Defendants argue that no underlying wrong supports the conspiracy claims.  Second, that IEAM does not meet the elevated pleading standards for claims sounding in fraud.  Unaccompanied allegations that parties received and sold stock, the Defendants argue, are insufficient to state a claim for conspiracy.  The Defendants describe IEAM's allegations as conclusory and impermissible group pleading.

For the reasons discussed below, the Court concludes that the Complaint fails to adequately allege an independent underlying tort, and fails to allege an independent overt act in connection with the conspiracy, as required by New York law.  Accordingly, the Court need not reach the Defendants' other arguments for now.

#### i. IEAM Fails to Adequately Allege an Independent Underlying Tort and Independent Overt Act

In New York, the elements of a civil conspiracy claim are: (1) an agreement to participate in an unlawful act; (2) an overt act by a party

---

[59] *See id.* ¶ 10.

to the agreement pursuant to and in furtherance of the scheme; and (3) injury resulting from the act.[60]  *Lindsay v. Lockwood*, 625 N.Y.S.2d 393 (Sup. Ct. 1994).

The Defendants urge dismissal of IEAM's civil conspiracy claims on the grounds that IEAM fails to adequately plead an underlying tort as required under New York law.  *See Perez v. Lopez*, 948 N.Y.S. 2d 312, 314 (App. Div. 2012) ("In order to properly plead a cause of action to recover damages for civil conspiracy, the plaintiff must allege a cognizable tort."); *Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d 465, 481 (E.D.N.Y. 1998) ("[A] cause of action for conspiracy to do something unlawful is valid to the extent that the underlying conduct alleged states a cause of action."); *Filler v. Hanvit Bank*, 156 Fed. Appx. 413, 418 (2d Cir. 2005) ("[A] claim of conspiracy cannot stand alone and must be dismissed if the underlying independent tort has not been adequately pleaded.").

Courts often dismiss conspiracy claims under New York as duplicative of other asserted claims.  Civil conspiracy "is merely the string whereby the plaintiff seeks to tie together those who, acting in concert, may be held responsible in damages for any overt act or acts." *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 123 (2d Cir. 1981) (*quoting Rutkin v. Reinfeld*, 229 F.2d 248, 252 (2d Cir. 1956)).  Plaintiffs who allege the same conduct in support of several claims risk dismissal of their conspiracy claims.  *See Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 591 (2d Cir. 2005) (A plaintiff may not "reallege a tort asserted elsewhere in the complaint in the guise of a separate conspiracy claim."); *Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank*, 755 F.2d 239, 251 (2d Cir. 1985) ("Count 7 added no new allegations to those of counts 1–6 except to reiterate that [defendants] had conspired to commit the acts heretofore described…[and therefore] Count 7 was properly dismissed…as duplicative…."); *In re Allou Distribs., Inc.*, 446 B.R. 32, 60-61 (Bankr. E.D.N.Y. 2011) (dismissing conspiracy claim

---

[60] Or put simply, "common action for common purpose by common agreement or understanding among a group, from which common responsibility derives." *Goldstein v. Siegel*, 19 A.D.2d 489, 493 (N. Y. App. Div. 1963).

because alleged conduct also formed the basis of plaintiffs' aiding and abetting claims); *In re Magnesium Corp.*, 399 B.R. 722, 775-76 (Bankr. S.D.N.Y. 2009) (holding that plaintiffs "must allege, in addition to the conspiracy, independent overt acts undertaken in pursuit of that conspiracy"); *Secs. Investor Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 332 (Bankr. S.D.N.Y. 1999) (dismissing claim for conspiracy to commit a breach of fiduciary duty because plaintiff could not recover twice for the same act).

In Count I, IEAM alleges that the Defendants participated in a "conspiracy to defraud" and engaged in "coordinated" and "purposefully fraudulent" behavior. IEAM does not, however, specify the alleged behavior, much less plead the elements of a cause of action for common law fraud against the Defendants. Thus, the Court must look elsewhere for an underlying tort that supports the conspiracy claims. *See Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d 465, 481-82 (E.D.N.Y. 1998) (holding that the plaintiff's claims for "conspiracy to commit fraud" must be supported by an adequately pleaded underlying tort).

Three other causes of action arguably support IEAM's conspiracy claims: fraudulent transfer, unjust enrichment, and breach of fiduciary duty. The first, fraudulent transfer, is a nonstarter. Bankruptcy courts do not recognize claims for damages for conspiracy to commit a fraudulent transfer. This Court has previously ruled that a trustee cannot assert claims for conspiracy to commit a fraudulent conveyance except as avoidance and recovery actions under §§ 544, 548, and 550. *See In re Fedders N. Am., Inc.*, 405 B.R. 527, 548-49 (Bankr. D. Del. 2009); *see also Tronox Inc.*, 429 B.R. 73, 103-104 (Bankr. S.D.N.Y. 2010) (dismissing claim for conspiracy to commit a fraudulent conveyance because a trustee's ability to assert claims for fraudulent conveyance is restricted by the Bankruptcy Code); *In re Brentwood Lexford Partners, LLC*, 292 B.R. 255, 275 (Bankr. N.D. Tx. 2003) ("[T]he court does not consider the fraudulent transfer under the civil conspiracy claim. To do so could lead to a result that expands remedies beyond § 550."); *In re Hamilton Taft & Co.*, 176 B.R. 895, 902 (Bankr. N.D. Ca. 1995) ("A

trustee's only authority to assert creditors' state-law causes of action related to fraudulent conveyances is found in section 544(b)....").  The Court sees no reason for a different outcome here.  The relevant provisions of New York statutory causes of action are available only to creditors.  *See* DCL §§ 274-276.  The Bankruptcy Code does not authorize IEAM to seek damages for fraudulent transfer claims under state law.  Thus, fraudulent transfer cannot double as the underlying tort for IEAM's civil conspiracy claims.

The other causes of action also do not sustain IEAM's asserted conspiracy claims.  "In order to sustain an allegation of civil conspiracy that involves a conspiracy to breach a fiduciary duty, all members of the alleged conspiracy must independently owe a fiduciary duty to the plaintiff." *Pope v. Rice*, No. 04 Civ. 4171-DLC, 2005 WL 613085, at *13 (S.D.N.Y. Mar. 14, 2005) (*citing Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 Civ. 8688-WHP, 2002 WL 362794, at *13-14 (S.D.N.Y. Mar. 6, 2002)).  To the extent that IEAM's conspiracy claims rely upon breach of fiduciary duty as the underlying tort, the claims cannot be sustained against Defendants not alleged to owe a duty to the company.  Further, the Court has found no precedent and IEAM has offered none suggesting that New York recognizes a conspiracy based solely upon the underlying wrong of unjust enrichment.

Moreover, even if limited to a set of breach of fiduciary duty Defendants, the Court cannot sustain the conspiracy claims in current form.  IEAM asserts the same generalized conduct—fraudulent and otherwise—as the basis for IEAM's conspiracy, breach of fiduciary duty, and other claims.   Put another way, IEAM fails to specifically identify and adequately plead an independent overt act for purposes of the conspiracy claim.  Under New York law, IEAM cannot state a claim for conspiracy as a catch-all claim for wrongdoing alleged throughout the Complaint and integral to the other asserted claims.  Accordingly, the conspiracy claims are dismissed with leave to amend.

### 2.  IEAM's § 544(b) Claims are Adequately Pleaded

The Defendants urge dismissal of the Count IV fraudulent conveyance claims for failure to identify a specific creditor or properly plead the elements of the underlying New York fraudulent conveyance causes of action.

### i. IEAM Need Not Identify a Specific Creditor at this Stage

The Defendants argue that IEAM lacks standing to assert the underlying New York fraudulent transfer causes of action.[61]   IEAM does not stand in the shoes of its creditors, they argue, because the Complaint fails to allege the existence of a creditor at the time of the alleged transfers who remains a creditor today.  In New York, only creditors have standing to prosecute claims for fraudulent conveyance. *Eberhard v. Marcu*, 530 F.3d 122, 129 (2d Cir. 2008).  Because IEAM is not itself a creditor, the Defendants say IEAM has no standing to bring claims under § 544(b).

The Court has previously considered and rejected the argument that a plaintiff asserting claims under § 544(b) must identify a specific creditor who could assert the underlying cause(s) of action.  *See IEAM v. Tabor Acad.* (*In re Pitt Penn Holding Co., Inc.*), No. 09-11475-BLS, Adv. No. 11-51879, 2011 WL 4352373 at *12 (Bankr. D. Del. Sept. 16, 2011).  IEAM's allegation here that "the transfers of stock described above are avoidable by creditors holding claims allowed under 11 U.S.C. § 502" is sufficient at this stage.[62]

### ii. The § 544(b) Claims and Underlying New York Fraudulent Conveyance Causes of Action are Adequately Pleaded

Section 544(b)(1) allows debtors to avoid prepetition transfers that are voidable under state law by a creditor holding an allowable unsecured claim.  11 U.S.C. § 544(b)(1).  The constructive fraud provisions of New York Debtor and Creditor Law allow creditors to avoid transfers made without fair consideration (defined as

---

[61] *See* Collyer Br. at 15-23, *IEAM v. Burtis* (*In re Pitt Penn Holding Co.*), No. 09-11475-BLS, Adv. No. 11-51868 (Bankr. D. Del. Mar. 29, 2012) (Adv. Dkt. No. 75).
[62] Compl. ¶ 191.

"reasonably equivalent value") that (i) left or rendered the transferor insolvent; (ii) left the transferor with unreasonably small capital; or (iii) the transferor executed with the intent or belief that it would incur debts beyond its ability to pay as the debts matured.  DCL §§ 272-275.  Constructive fraud claims are subject to the notice pleading standards of Federal Rule of Civil Procedure 8(a).  *See Brandt v. Trivest* (*In re Plassein Int'l Corp.*), 352 B.R. 36, 40 (Bankr. Del. 2006).

Under DCL section 276, plaintiffs may assert fraud claims for transfers made with actual intent to hinder, delay, or defraud present or future creditors.  DCL § 276.  Actual fraud claims are subject to the heightened pleading standard of Rule 9(b).  Fed. R. Civ. P. 9(b).  Like fraudulent transfers under § 548, intent can be inferred by "badges of fraud" including close relationships between the parties, inadequacy of consideration, and other factual circumstances.  *See, e.g., In re DBSI, Inc.*, 445 B.R. 344, 348 (Bankr. D. Del. 2012); *Sharp Int'l Corp. v. State St. Bank & Trust Co.* (*In re Sharp Int'l Corp.*), 403 F.3d 43, 56 (2d Cir. 2005) (performing badges of fraud analysis for claims under DCL § 276).

The Defendants say IEAM fails on both scores.  As to the constructive fraud claims, the Defendants argue that the Complaint includes no non-conclusory factual allegations that the stock and cash transfers were made without fair consideration, that IEAM was insolvent or rendered insolvent at the time of the transfers, that IEAM was left with unreasonably small capital as a result of the transfers, or that IEAM intended or believed at the time of the transfers that it would incur debts beyond its ability to repay as the debt matured.  As to the actual fraud claims, the Defendants says the alleged "badges of fraud" do not support an inference of intent.

In *Brandywine*, the Court sustained nearly identical factual allegations against motions to dismiss that made substantially the same arguments.  *See IEAM v. Brandywine Consultants* (*In re Pitt Penn Holding Co., Inc.*), No. 09-11475-BLS, Adv. No. 09-52318, at *19-24 (Bankr. D. Del. Sept. 16, 2011) (Adv. Dkt. Nos. 59, 60); *see also In Re DVI*, 2008 WL 4239120 (rejecting defendant's argument that it provided value in exchange for transfers because "[a]ll that is needed at this stage is an

allegation that there was a transfer for less than reasonably equivalent value at a time when the Debtors were insolvent"). Here, IEAM alleges that it did not receive reasonably equivalent value for the stock.[63] Several Defendants vigorously deny this allegation, but at this stage the Court accepts the Plaintiff's allegations as true while awaiting further factual development.    IEAM's allegations of insolvency[64] are also sufficient at this stage. *See IEAM v. Tabor Acad.* (*In re Pitt Penn Holding Co., Inc.*), No. 09-11475-BLS, Adv. No. 11-51879, 2011 WL 4352373 at *19-20 (Bankr. D. Del. Sept. 16, 2011); *DBSI*, 445 B.R. at 349 (rejecting defendant's argument that plaintiff must provide calculations evidencing insolvency because "insolvency is generally a factual determination not appropriate for resolution in a motion to dismiss"). Viewed favorably to IEAM, the Complaint adequately alleges that the transfers left the company with unreasonably small capital and with knowledge that the company would be unable to repay its debts under DCL sections 274 and 275.  IEAM's constructive fraud allegations need not be dismissed at this stage.

IEAM's actual fraud claims are also adequately pleaded.  IEAM alleges that the transfers were made with the intent to defraud, among others, present and future creditors of IEAM.[65]  The Complaint alleges specific facts concerning the Defendants' receipt of shares.[66]  IEAM says the Defendants accepted and immediately sold the shares on the open market, even though they were not authorized to do so under the terms of the SOP, the S-8, and federal securities laws.[67]    Most of the Defendants are alleged to be IEAM's former officers and directors, their relatives, or entities controlled by these parties.  Taken together, the allegations of IEAM's insolvency, inadequate consideration for the stock and cash transfers,[68] close relationships between the Defendants,

---

[63] *Id.* ¶¶ 174-192.

[64] *Id.* ¶¶ 10, 166, 178, 187.

[65] *Id.* ¶ 176.

[66] *Id.* ¶ 127.

[67] *Id.* ¶ 128-133.

[68] Alleged cash transfers to Defendants are adequate to the extent IEAM provide comparable details such as the date and amount of the transfers.

and the surrounding circumstances of a convicted fraud pass muster under a "badges of fraud" analysis.  IEAM pleads sufficient facts for the Court to infer intent.

### 3. The § 548(a)(1) Claims for Fraudulent Transfer are Adequately Pleaded

The analysis is essentially the same for IEAM's fraudulent transfer claims.  Section 548 allows recovery of fraudulent transfers made within two years before the Petition Date.  11 U.S.C. § 548(a)(1)(A).  Under § 548(a)(1)(A), a debtor can recover for transfers made "with actual intent to hinder, delay, or defraud" present or future creditors of the debtor.  *Id.*  IEAM again alleges that the Defendants received stock or cash, details the circumstances of the transfers, and alleges that the transfers were made with intent to hinder, delay, or defraud creditors.[69]  IEAM alleges that the Defendants gave no consideration for these transfers.  IEAM also pleads insolvency at all relevant times.[70]  Many Defendants are alleged to be implicated officers and directors, their family members, or entities controlled by these parties.  In the badges of fraud analysis, the Court finds that these allegations are sufficient to make out a claim for actual fraudulent transfer.

Under § 548(a)(1)(B), a debtor can recover a transfer if the debtor received less than reasonably equivalent value and was insolvent at the time of the transfer, was left with unreasonably small capital, or intended or believed it would incur debt beyond its ability to repay as the debts matured.  § 548(a)(1)(B)(ii).  The analysis essentially mirrors that under § 544(b).  The Court concludes that IEAM adequately pleads claims under § 548.

### 4. The Unjust Enrichment Claims are Adequately Pleaded

Unjust enrichment is a quasi-contractual remedy that serves as an alternative to contract.  *Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*, 317 F. Supp. 2d 301, 333-34 (S.D.N.Y 2003).  In New York, the elements

---

[69] Compl. ¶¶ 127, 165.

[70] *Id.* ¶ 166.

of unjust enrichment are (1) the Defendant benefitted; (2) at the Plaintiff's expense; and (3) equity and good conscience require restitution. *Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006). Plaintiffs stating a claim for unjust enrichment must allege direct dealing or a substantive relationship between parties. *Czech Beer Imps., Inc., v. C. Haven Imps., LLC,* No. 04 Civ. 2270, 2005 WL 1490097, at *7 (S.D.N.Y. June 23, 2005).

The Defendants make several arguments for dismissing IEAM's unjust enrichment claims. First, they argue that their alleged enrichment was not unjust.[71] The argument assumes that both IEAM and the Defendants are innocent parties. The Defendants cite the proposition that when one of two innocent parties must suffer a loss caused by a third party's fraud, the party that enabled the fraud must bear the loss. *In re Dreier LLP*, 450 B.R. 452, 457-59 (Bankr. S.D.N.Y. 2011). IEAM must bear the loss, they say, because the company had an obligation to monitor its scheming officers, and the Defendants were innocent because IEAM has not shown that they knew of the fraud or agreed to participate. The Court rejects this argument as premature. IEAM plausibly alleges that the Defendants who received stock knew they were participating in a pump-and-dump scheme. Further factual inquiry and development is required before the Court can rule on this argument.

Second, the Defendants say IEAM fails to adequately plead the elements of an unjust enrichment claim. According to the Defendants, dismissal is warranted because IEAM fails to adequately allege the existence of a substantive relationship between IEAM and some Defendants, the expectation of payment for the stock from some Defendants, and the benefit conferred by the shares over and above the price said to have been paid by some Defendants. Further, the Defendants urge dismissal because IEAM fails to plead the actual value of the shares, as opposed to the market value.

---

[71] *See* Collyer Br. at 13-15, *IEAM v. Burtis* (*In re Pitt Penn Holding Co.*), No. 09-11475-BLS, Adv. No. 11-51868 (Bankr. D. Del. Mar. 29, 2012) (Adv. Dkt. No. 75).

IEAM alleges that the Defendants were unjustly enriched by the receipt of illegally issued shares and cash payments, that the transfers impoverished IEAM by the value of the shares given away, and that the Defendants had no justification to receive the shares.[72]  IEAM identifies the exact number, valuation, and issue dates of shares allegedly received by the Defendants.[73]  These allegations support the inference of a substantive relationship between IEAM and the Defendants.  The Defendants' other arguments concerning this claim operate as a denial of IEAM's factual allegations.  The Court upheld unjust enrichment claims with substantially the same factual allegations in *IEAM v. Brandywine Consultants* (*In re Pitt Penn Holding Co., Inc.*), No. 09-11475-BLS, Adv. No. 09-52318 (Bankr. D. Del. Sept. 16, 2011) (Adv. Dkt. Nos. 59, 60).  Taking the pleading in the light most favorable to the plaintiff, the Court concludes that IEAM adequately alleges a claim for unjust enrichment.

### 5.  IEAM Adequately Alleges Breach of Fiduciary Duty

The Defendants urge dismissal of Count V for failure to state a claim under the applicable pleading standards.  Some Defendants also argue that the Complaint fails to allege the existence of a duty because IEAM does not specify the positions held by those Defendants.

In New York, the elements of a breach of fiduciary duty claim are duty, breach of that duty, and causation.[74]  The officers, directors, and

---

[72] Compl. ¶169-172.

[73] *Id.* ¶ 127.

[74] In IEAM's Memorandum of Law and at oral argument, it asserted that Nevada law, not New York law, applies to the breach of fiduciary duty claims.  *See* IEAM's Mem. of Law in Opp'n to the Mots. to Dismiss 31, May 2, 2012; Tr. 53-54, Aug. 30, 2012.  Because the Complaint brings claims under New York law, the Defendants call for disregarding IEAM's current position and applying New York law and applicable statutes of limitations.  The Court makes no comment as to what state law properly applies at this stage.  The elements of a cause of action for breach of fiduciary duty are essentially the same under New York and Nevada law, and the applicable statutes of limitations are susceptible to equitable tolling.  IEAM's inconsistency on this matter does not materially impact the analysis at this stage.  Accordingly, the Court finds that the Defendants will not be prejudiced by allowing IEAM to amend the breach of fiduciary duty claim to apply Nevada law.

employees of a corporation owe fiduciary duties of loyalty, care, and good faith to the corporation.  *Cutler v. Ensage, Inc.*, No. 600709/07, slip op. at 7 (N.Y. Sup. Ct. Nov. 30, 2007).

The Complaint alleges that nine Defendants were "officers and/or employees" who breached their fiduciary duties to IEAM, causing specified damages to the company.[75]  With respect to breach, Count V refers to the "conduct alleged above" in the body of the Complaint. The alleged breach common to most Defendants is the improper receipt of stock and cash.[76]  IEAM also alleges that seven of the nine Defendants caused IEAM to make "materially false and misleading statements" and "knew or should have known that [IEAM's financial statements] were false."[77]

The Court concludes that IEAM adequately alleges a claim for breach of fiduciary duty.  As discussed above, IEAM's allegations of the Defendants' improper receipt of cash or SOP shares are sufficient under both Rule 8 and the higher standard of Rule 9(b).  With respect to the Defendants' specific roles at IEAM, the Court finds that the Defendants will not be prejudiced by allowing IEAM to amend the Complaint to specify the roles in greater detail.

### 6. IEAM's Claims Under § 550 are Adequately Pleaded

Section 550 allows a debtor to recover the value of property to the extent that the transfer of such property is avoided under § 544 and other Code provisions.  IEAM alleges the transfer of SOP shares to the Defendants under § 544.  As discussed, the Complaint adequately states a claim the Defendants under § 544.  Accordingly, IEAM adequately alleges § 550(a) claims for recovery of the allegedly fraudulent transfers.

---

[75] Compl. ¶ 194-196.

[76] *Id.* ¶ 127.

[77] *Id.* ¶ 61.

## I.  Discussion of Claims Against Individual Defendants

The Court discusses below IEAM's claims[78] against certain Defendants to the extent that separate treatment is warranted by unique factual allegations or legal issues.

### 1.  Defendant Robert "Dan" Redmond

Defendant Redmond argues that the Complaint fails to state a claim upon which relief may be granted because, among other shortcomings, IEAM fails to adequately allege his wrongdoing under the applicable pleadings standards.  Redmond also argues that the Class Action Settlement Agreement released the claims IEAM now asserts against him.

The Complaint describes Redmond, a former executive vice president of IEAM, as a "key player" in the Mazzuto Scheme.[79]  IEAM alleges that Redmond made "numerous false statements to the public" in press releases to create the false impression that IEAM common stock was a lucrative investment.[80]  IEAM also alleges that he was involved in preliminary discussions for an improper stock buy-back program.[81]  Regarding compensation, IEAM says only that he was paid "far more [] than justified" as a "bribe" for making false statements.[82]

These allegations are insufficient to sustain some of IEAM's claims.  Plaintiffs asserting bankruptcy claims under §§ 544, 548, 550 and applicable state law must identify an avoidable transfer.  Similarly, claims for unjust enrichment require a showing that the defendant received a benefit.  IEAM fails to specifically identify Redmond's compensation.  The barebones allegation that Redmond was paid "far more than justified" is insufficient under the applicable pleading standards of Federal Rules of Civil Procedure 8 and 9(b) and relevant case law.  Absent well-pleaded allegations of an avoidable transfer or a

---

[78] This discussion does not include the conspiracy claims, which are dismissed as to all Defendants as discussed above.

[79] *Id.* ¶¶ 36, 139.

[80] *Id.* ¶ 139.

[81] *Id.* ¶¶ 109-117.

[82] *Id.* ¶ 140.

benefit, IEAM fails to state a claim upon which relief may be granted for the claims listed above.  These claims will be dismissed with leave to amend as to Defendant Redmond.

In contrast, IEAM's breach of fiduciary duty claim against Defendant Redmond does not require identifying a stock or cash transfer to him.  The Complaint alleges that Redmond, a senior officer of the company, knew or should have known the Mazzuto Scheme was causing IEAM to issue false public statements.[83]   IEAM specifically identifies at least some of these false statements.[84]   Viewed in the light most favorable to the plaintiff, the pleadings allow the Court to plausibly infer that IEAM was injured because Redmond knowingly misrepresented, or failed to act to correct a misrepresentation, of IEAM's finances to the general public for the purpose of obtaining financial benefits for the Defendants, thus breaching his fiduciary duty to IEAM.  Accordingly, the Court finds that IEAM adequately alleges a claim for breach of fiduciary duty as to Defendant Redmond.[85]

## 2. Defendants Crawford Shaw and Killeen & Associates, P.C.

IEAM describes Defendant Crawford Shaw as a former Board Member and CEO of IEAM when the company was known as Advanced Bio/Chem Inc.[86]   IEAM alleges that Shaw made numerous false statements concerning the company's financial situation to advance the Mazzuto Scheme.[87]   IEAM also alleges that Shaw was the beneficiary of unlawful SOP share transfers valued at over two million

---

[83] *Id.* ¶¶ 36, 61, 139-140.

[84] *Id.* ¶¶ 61-91.

[85] For the reasons stated in Part III.A above, the Court will not rule at this time on Defendant Redmond's argument that the Class Action Settlement Agreement released IEAM's claims against him.  The Court notes that, upon review of the pleadings, it appears Redmond is the Defendant most likely to benefit from a ruling that the Settlement Agreement released IEAM's asserted claims. Nevertheless, that inquiry must remain open at this early stage in the litigation.

[86] Compl. ¶ 16.

[87] *Id.* ¶ 141-143.

dollars to Defendant Killeen & Associates.[88]    The Court finds these allegations sufficient to sustain IEAM's claims for now.

### 3.  Defendants David Zazoff and ZA-Consulting LLC

Defendants David Zazoff and ZA-Consulting LLC (collectively, the "Zazoff Defendants") argue that IEAM's claims are inadequately pleaded.[89]   The Zazoff Defendants say IEAM fails to provide accurate or specific information about his alleged involvement in releasing false statements and improper receipt of cash, stock, and health benefits.  For example, the Complaint incorrectly tabulates the number of shares and value of the stock allegedly transferred to David Zazoff.[90]

The Court declines to dismiss IEAM's claims against the Zazoff Defendants.   While some allegations may be deficient, others are sufficient to sustain IEAM's claims.  IEAM alleges that David Zazoff received cash and medical benefits and specifies the value, date, and unlawful nature of the alleged transfers.[91]   IEAM also alleges that David Zazoff was IEAM's head of investor relations, owed a fiduciary duty to the company, and knew or was reckless in not knowing that IEAM's public statements were false.[92]   The Court finds these allegations sufficient under the applicable pleading standards.  Viewed in the light most favorable to the plaintiff, the pleadings allow the Court to plausibly infer the Zazoff Defendants' knowledge, agreement, and participation in the alleged wrongdoing.

IEAM will be granted leave to amend the Complaint to, among other things, correct the above-mentioned mathematical errors.

### 4.  Defendant Steven Berger

IEAM places Defendant Steven Berger among the Defendant who were "officer[s] and/or employee[s]" of IEAM.   IEAM alleges that Defendant Berger, acting as counsel to Margulies & Levinson and Pitt

---

[88] *Id.* ¶ 127(d).

[89] IEAM alleges that ZA-consulting is a company controlled by David Zazoff.  *Id.* ¶ 23.

[90] *Id.* ¶ 127(k).

[91] *Id.* ¶¶ 136-138, 151(f).

[92] *Id.* ¶¶ 61, 135-36.

Penn Oil, was "instrumental in assisting [his supervisor James] Margulies in the creation of corporate records and…withholding of those records from the IEAM Governance Committee."[93]   Further, IEAM alleges that Berger received at least $28,000 in "gratuitous" cash payments from IEAM, directed by Mazzuto and Margulies, in exchange for his assistance to the Mazzuto Scheme.[94]   Here, IEAM's allegation that Berger, serving in a fiduciary capacity, worked closely with and counseled other Defendants in connection with fraudulent acts allows the court to infer that the cash payment was improper.  The Court finds that the Complaint, read favorably to IEAM, adequately alleges the claims against Defendant Berger.

### 5. Defendant Margulies & Levinson

Defendant Margulies & Levinson, James Margulies' law firm, allegedly received over $500,000 in improper cash transfers from IEAM's coffers over the course of three years.[95]   Defendants Jeffrey Levinson and Steven Berger are also alleged members of the firm, and IEAM's claims against them survive the Motions.  The Court concludes that, read favorably to IEAM, the Complaint adequately alleges claims against Margulies & Levinson.

### 6. Defendants Berger Apple and Computer Protech

By contrast, the claims against Berger Apple and Computer Protech will be dismissed with leave to amend.  These Defendants do not appear in the storyline of IEAM's Complaint.  The sole allegations concerning Berger Apple are the company's receipt of $1,000 in cash from IEAM, allegedly for no consideration, plus "additional cash payments" on unspecified dates.[96]   The alleged improper transfers of over one-half million dollars to Computer Protech are more substantial, but the analysis is the same.  Absent additional factual allegations or circumstances rising to the level of detail provided for the alleged SOP transfers or otherwise tying Berger Apple and Computer Protech to the

---

[93] *Id.* ¶ 146.
[94] *Id.* ¶ 152(l).
[95] *Id.* ¶ 127.
[96] *Id.* ¶ 152(o).

alleged fraud, IEAM's claims against them are too thin to infer knowledge or agreement to participate in a fraud.

## IV.  IEAM IS GRANTED LEAVE TO AMEND THE COMPLAINT

Despite the shortcomings noted above, IEAM is entitled to another opportunity to amend the Complaint.  The Court will give IEAM 45 days to amend the Complaint to address these shortcomings.

## V. CONCLUSION

For all of these reasons, the Motions to Dismiss are granted in part and denied in part.  IEAM will have 45 days to amend the Complaint in accordance with this Opinion.

**BY THE COURT**:

Dated: November 30, 2012
Wilmington, Delaware

Brendan Linehan Shannon
United States Bankruptcy Judge